**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:14-cr-20032-CSB-DGB |
| | ) | |
| MAURICE COLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT'S SENTENCING MEMORANDUM**

---

NOW COMES the Defendant, MAURICE COLLINS, by his attorney,

ELISABETH R. POLLOCK of the Federal Defender's Office for the Central District of

Illinois, and for his Sentencing Memorandum states as follows:

**I.      Procedural History**

On June 4, 2014, Defendant Maurice Collins was indicted on four counts of

distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and

(b)(1)(C).  (R. 8)  Mr. Collins entered a plea of guilty to all four counts on November 19,

2014, without a written plea agreement.  (R. 19)  His Guidelines range under the

Revised Presentence Report is 78 to 97 months[1], but due to his prior history, Mr. Collins'

---

[1]This range is disputed by the Defendant.  If the two-level enhancements for obstruction of justice and leader/organizer are removed and acceptance of responsibility given, his total offense level would be 21, resulting in a Guidelines range of 37 to 46 months.

mandatory minimum is 10 years on Count 4 of the Indictment.  (PSR ¶¶ 134-135)

However, he is a Criminal History Category I so the safety valve could apply, resulting

in a sentence lower than the mandatory minimum.  (PSR ¶ 70)

## II.     Objections to the Presentence Report

### A.     Obstruction of Justice and Denial of Acceptance of Responsibility

In the Revised Presentence Report, Mr. Collins was given a two-level

enhancement for obstruction of justice under U.S.S.G. § 3C1.1 because the Government

claims that he identified and intentionally destroyed a GPS tracking device that had

been lawfully attached to his vehicle.  (PSR ¶ 42, 51) Seeing as this allegation is

unfounded and incorrect, the application of the enhancement is inappropriate and

should be removed.

Mr. Collins was never aware that the GPS device was on the vehicle, nor that it

was a Government-issued tracking device.  Rather, the GPS device was discovered by

Mr. Collins' mechanic, Terry Wright, Jr., when he brought the car to Mr. Wright for

repairs after an accident.

Mr. Wright was interviewed by counsel, the Probation Office, and the DEA.  His

story has been consistent the entire time, and he has stated that Mr. Collins brought him

the vehicle for repairs, which is when Mr. Wright discovered the device.  He believed it

may have been from a dealership, but denied knowing it was law enforcement that

placed the device on the vehicle. He photographed it and sent the pictures to Mr. Collins, who also did not know what it was. Mr. Wright disabled the device and kept it in his shop. He returned it to law enforcement agents when they came to interview him earlier this week. (See Exhibit "A" - Summary Report of Interview with Terry Wright, Jr.)

In the Addendum to the Revised Presentence Report, the Probation Office notes that a confidential informant, T.G., reported that Mr. Collins spoke of finding and destroying a black box under his vehicle. She also stated that she heard Mr. Collins say it was a "fed box." Clearly this is not true since the device was never destroyed; additionally, T.G.'s credibility is questionable since she cooperated against Mr. Collins in an effort to absolve herself of criminal responsibility. Mr. Wright, who has no involvement with illegal drugs and runs an upstanding local business, still had the device in his shop and had not destroyed it; rather, he disabled it and kept it after he removed it from Mr. Collins' vehicle.

There is absolutely no reliable information to support a finding that Mr. Collins knew about the GPS before Mr. Wright found it, or that he intended to destroy the GPS. Add to that the fact that the GPS was not actually "destroyed" as indicated by the Presentence Report, and it is clear that the obstruction of justice enhancement should not be applied because Mr. Collins did not willfully obstruct or impede the

administration of justice as required by Section 3C1.1.

Mr. Collins was denied acceptance of responsibility solely on the basis of his alleged destruction of the GPS device. Since he did not act in the manner portrayed by the Presentence Report and pled guilty in a timely manner, the three-level reduction for acceptance of responsibility should be applied.

## B.    Leader/Organizer Enhancement

Mr. Collins was also given an two-level enhancement under U.S.S.G. § 3B1.1(c), which states that "[I]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization. U.S.S.G. § 3C1.1, cmt. n. 2.

Application Note 4 provides some factors to be used in determining whether a defendant falls under any of these categories: (1) the exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the

crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, cmt. n. 4.

The 7th Circuit has found that the factors in Application Note 4 can be used to determine not only whether someone is a leader/organizer or a manager/supervisor, but also whether the enhancement should apply in the first place. *United States v. Weaver*, 716 F.3d 439, 442-443 (7th Cir. 2013). The point is whether a defendant helps manage or supervise a criminal scheme. *Id.* at 443 (citing *United States v. Grigsby*, 692 F.3d 778 (7th Cir. 2012)). For purposes of § 3B1.1, a defendant exercises control and authority over another when he "tells people what to do and determines whether they've done it." *Id.* at 443-444 (citing *United States v. Figueroa*, 682 F.3d 694, 697 (7th Cir. 2012)). This exercise of control and authority will usually allow the defendant to impose some sanction, reward, or punishment for the underling's execution of the directed task. *Id.* at 444. Thus, the ability to coerce underlings is a key indicator of control or authority suggestive of managerial or supervisory responsibility in the criminal enterprise. *Id.*, citing *United States v. Bennett*, 708 F.3d 879, 892 (7th Cir. 2013). There must be some "heirarchy" among those involved in order to qualify for this enhancement. *Id.*

In the present case, Mr. Collins' upward adjustment for his role in the offense is based on two transactions: first, on November 21, 2013, when Mr. Collins had a friend

deliver cocaine for him while he was unavailable; and second, on April 16, 2014, when

Mr. Collins directed the confidential source to someone who could fulfill his need for

crack cocaine because Mr. Collins only sold powder.

What is clear from the evidence is that Mr. Collins was a one-man show, and that

he focused solely on distributing powder cocaine in Danville and Champaign.  During

the course of the investigation, the confidential source only ever spoke with Mr. Collins

by phone and did not deal directly with anyone else.  As with many small business

owners, sometimes you get spread a little too thin and you have to ask business

associates to step in and assist you.  That is precisely what occurred on November 21,

2013, when Mr. Collins asked a friend to do a run for him while he was unavailable.

Mr. Collins and this friend had exchanged favors before, although they did not work

together, conspire together, or profit from each other's businesses.  Mr. Collins did not

organize, lead, manage, or supervise anyone in any enterprise, and he also did not

exercise management responsibility over the property, assets, or activities of a criminal

organization.  He may have obtained a favor and made a referral, but those are not

meant to be covered by Section 3B1.1(c).

In the present case, for both of the deals at issue, Mr. Collins was not exercising

any control or dominion over any other participant in criminal activity.  There was not

even a scheme for him to manage; Collins was generally on his own and did not have

people working under him, but rather had a few independent contractors to whom he made referrals or asked for limited assistance. In the first instance, his friend was simply doing him a favor by delivering a package while Mr. Collins was otherwise occupied. In the second instance, Mr. Collins was acting as a middleman or a referral service; he merely sent a customer that he could not provide for to someone who could fulfill their needs. Based on the foregoing, the leadership enhancement was not warranted and should be removed.

### III.    The safety valve should apply to Mr. Collins

When faced with a mandatory minimum sentence under the Controlled Substances Act, a defendant may still be eligible for a below mandatory minimum sentence if they meet the following requirements: (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) not later than the time of the sentencing hearing, the defendant has

truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.  18 U.S.C. § 3553(f).

In this case, Mr. Collins meets the requirements of subsections (1) through (3). However, the Government argues that because of the leadership enhancement (which should not apply) and because law enforcement agents believe he was not honest during his safety valve proffer (although they have not said why they believe him to be dishonest) the safety valve does not apply.

The arguments with respect to the leadership enhancement were made previously and will not be repeated.  With respect to the safety valve proffer, Mr. Collins told the truth to agents when he was finally interviewed last week.  He correctly identified his source, in addition to the amounts of cocaine that he dealt at a distinct disadvantage to himself, as the amounts increased his total drug quantity and were used against him to calculate his base offense level.

The Government has chosen to believe the statements of T.G., the woman who sold crack to the confidential informant on April 21, 2014.  She stated that she held crack

for Mr. Collins previously and sold it for him. The evidence does not support those allegations. First, T.G. already lied when she said that Mr. Collins destroyed the GPS device and knew what it was, which is clearly contradicted by Mr. Wright's statements and the fact that the GPS was recently returned to the agents working the case. Second, on the date when she sold crack to the confidential source, Mr. Collins was nowhere to be found. He referred the source to her and then washed his hands of the situation. There is no evidence that Mr. Collins profited from that transaction, although there is reason to believe that T.G.'s boyfriend of over a decade, Christopher Washington, was involved in crack dealing for a long time in the Danville area and has a criminal history to reflect that.

Counsel anticipates that the Government will call several witnesses at the sentencing hearing in this case, which is currently set for May 4, 2015, at 3:00 pm. More detailed arguments can be made verbally after receiving all of the evidence, but at the conclusion of argument it should be clear that Mr. Collins *does* qualify for the safety valve, and counsel will ask this Court to sentence him below the mandatory minimum of 120 months. (See Group Exhibit "B" - Combined Letters of Support for Maurice Collins)

## IV.    Conclusion

WHEREFORE, Defendant MAURICE COLLINS respectfully requests that this

Court impose a sentence of three years imprisonment, eight years of supervised release,

a $100 special assessment, and no fine.

By:    /s/Elisabeth R. Pollock
Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, Illinois 61801
Telephone: (217) 373-0666
Facsimile:  (217) 373-0667
Email: Elisabeth_Pollock@fd.org


## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2015, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to AUSA Jason Bohm.

/s/Elisabeth R. Pollock
Elisabeth R. Pollock
Assistant Federal Public Defender
300 West Main Street
Urbana, Illinois 61801
Telephone: (217) 373-0666
Facsimile:  (217) 373-0667
Email: Elisabeth_Pollock@fd.org

# EXHIBIT A

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code | 2. Cross File | Related Files | 3. File No. ▮▮▮▮ | 4. G-DEP Identifier ▮▮▮▮ |
|---|---|---|---|---|
| 5. By: J.J Christian, TFO  At: Springfield (IL) RO | ☐ ☐ ☐ ☐ ☐ | | 6. File Title ▮▮▮▮ | |
| 7. ☐ Closed ☐ Requested Action Completed  ☐ Action Requested By: | | | 8. Date Prepared  04-29-2015 | |

9. Other Officers: CPD Narcotics Officer Jack Turner

10. Report Re: Intelligence Regarding the GPS removal from Maurcie COLLINS vehcicle by Terry A. WRIGHT.

## DETAILS

1. On April 29, 2015, at approximately 1630 hours, TFO Christian and Champaign Police Narcotics Officer Jack Turner met with Terry WRIGHT at his auto repair shop, located at the intersection of Collett Street and East Voorhess Avenue in Danville, Illinois.  TFO Christian served WRIGHT with a subpoena which was issued for his appearance by United States District Court for the Central District of Illinois, which ordered him to appear on May 4, 2015.  WRIGHT advised TFO Christian that he understood the subpoena and was quite familiar with the cars that the subpoena had been issued for.

2. WRIGHT also retrieved a GPS device, which is owned by the Champaign Police Department.  WRIGHT advised that he located the said device on COLLINS' Cadillac while it was at his shop for repair.  He advised that he removed the device from the vehicle and notified COLLINS that it had been located and then disassembled the device, and cut the battery wires on the device.  WRIGHT advised that he had no idea the device was placed on the vehicle as part of a law enforcement investigation and believed that it may have been installed by a dealership to track the vehicle if payment was not received.

3. WRIGHT advised that his business is only an automotive repair shop and that he was not an auto dealer and has never been. TFO Christian asked WRIGHT if he ever sold any vehicles for COLLINS at his business, and he advised that he never did.  WRIGHT did advise that he has notified

| 11. Distribution:  Division  District  Other | 12. Signature (Agent)  Jeremiah J Christian, TFO | 13. Date  04-29-2015 |
|---|---|---|
| | 14. Approved (Name and Title)  Michael Mokhoff, GS | 15. Date |

DEA Form     - 6
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| | 1. File No. ▬▬▬▬ | 2. G-DEP Identifier ▬▬▬ |
|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | 3. File Title ▬▬▬▬ | |
| 4. Page 2 of 2 | | |
| 5. Program Code | 6. Date Prepared 04-29-2015 | |

acquaintances and clientelle if COLLINS had a vehicle for sale that they might be interested in.  WRIGHT advised that he has worked on numerous cars for COLLINS that he had mentioned were purchased at an automotive auction.  He advised that the only compensation he ever has received from COLLINS was for repairs made to those vehicles, and denied ever being compensated for the sell of any of his vehicles.  WRIGHT denied any knowledge or involvment in COLLINS DTO.

## INDEXING

1. COLLINS, Maurice; NADDIS: ▬▬▬

2. WRIGHT, Terry A; NADDIS: ▬▬▬;  W/M; DOB: 01-09-1979; HGT: 5'11; WGT: 155 LB; ▬▬▬; ADDRESS: 216 Indiana Avenue, Westville, IL.

DEA Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

# EXHIBIT B

# Visiting Physicians

**Benjamin Toh, MD**
(Medical Director)
826 S. Miller St, Suite 1, Chicago IL 60607
Tel: (312) 733-9010

February 4, 2015

Marilyn Collins Corley
812 E. 131st St
Riverdale, IL 60827

I am requesting Ms. Corley's son, Maurice Collins, not to be sentenced far from Ms. Corley because she is not able to travel long distance to see her son. She is a morbidly obese wheelchair bound patient that suffers from renal failure which necessitates she have dialysis three times a week. Due to these circumstances it would be extremely difficult for her to see her son if he was sentenced outside of Chicago area.

Please ensure that her son remain as close to her home as possible so she can visit him as often as possible.

Thank you for your attention in this matter.

Sincerely,

Mitchele Hogan, M.D.

To whom it may concern,

I'm writing this letter regarding Maurice Collins whom is an amazing, wonderful, caring, responsible person and etc. I can go on and on about him. One thing for sure he loves his kids and would do anything to care for them the 5½ years I've known him that was his main priority to make sure his kids had everything they needed. Maurice is the most kind hearted person I've meet in the years I've been on this earth and I hate to see him in the situation that he's in right now. Hope this letter can do some good because Maurice Collins is really a good person haven't been in any trouble.

Thank You

Anycia collins

Dear Judge

My Dad is good to me and my brothers.
He helps us when we need help.
And he Cooks for us me and my brother
Love our dad so much. My dad is in my
heart I love him so much.


Anyciacollins        Montrell collins

Terrion            Collins                    10/19/14

Dear Judge My DaD is a good
DaD and he take care of me.
he Buys me clothers    when I
need them. That is My DaD,
know one can take his Spot
in My like he will yive me
every thiny I will like I Love
My DaD.
From, Terrion Collins

Jessica Hall
10-19-14

Dear Judge

my uncle is so good and he take care of everybody and and all of my cunz them and the even take care of me wat ever i need he buy it for me and i really Love my uncle with all my heart and i know he love everybody even my Grandma and i im happy he can be the best uncle he can be to me

from, Jessica Hall

Martel Collins
10-19-14

To the January

Dear Jants, My Dad is a good
Dad to me he take carry of me
i love him. please dont take
him for to long i dont know
what i am going to do with
out him. Because i like to go
out with my Dad & i have a
lot of Borther in Sister
that he also take cour of.
My Dad is a pruant that
love he Kids he is not a bad
Dad he do caur.


from, Martel Collins

Maurice collins :)
10-19-14

Dear Judge My father is a good father to Me. He taues care of Me, he buys Me clothes when i need them. he is the best father to Me and i would do anything to keeP him around. NobOdy could tave his SPot in My life. When My father is there for Me i am happy. He has been the best dad he could have been to me,

from, Maurice collins

10-21-14

My name is Roselyn Jenkins I would like to say a few things Maurice Collins is my son-in-law and how he helped me with a few issues with my life. He has housed me when I was homeless had no where to live help me get personal items, feed me. He always fussed at me about my drug addiction. He has helped me with that, always saying he was detoxing me. He also got me percription eye glasses on 2 different occasions. He is a good Man a good person. Great father family man. He will help anyone and has a good heart. A very positive person miano well. I am also happy to say and serious if it wasn't for his sterness. I wouldn't made an effort. Today I have my own home living nice and working two jobs. Wasn't for Maurice help and standing on me to do better to live right. And showed love at same time question would I've done it.

Thank You

Roselyn Jenkins

To Whom This
May Conceen!

My name is Maeilyn Collins
I am Maurice Collins
Mother, Maurice is a good
son he has been a good
And loving Son, Maurice
was giving me a kidney but
for my body peoducing
to many Antibodies it cannot
be done eite now but we have
been put on a list called
the Swap list so if it comes
up he will have to be avaible
for it to be done, And I really
need him home with me to
helpr me I was in the hosipital
for 10 days. So I would like foe
him to be here with me until
he is Sentence.. I am having
a difficult time walking and doing
things in the house so I really
would like foe you to let him
stay out to help me. Recovee
foe this teansplantt.

Thankyou
Maeilyn collins

8/20/2014

Maurice Collins

Letter of Recognition

I am writing on behalf of Maurice Collins.  Maurice Collins was a great asset to our membership program.  His services included donating clothes, monetary contributions, assisting on field trips, and participating in neighborhood clean ups. He served as a mentor in our program for a little over 2 years and was always a pleasure to have around.

Let this letter hold as proof of services and integral partnership with the Vision Sight Purpose Mentorship Program.

_____

Joy Ellington
Vision. Sight. Purpose. Mentorship Program

August 21, 2014

To whom it may concern;

I am writing this letter in regards to Maurice Collins. I have been blessed to be apart of his life and know him for the last 8 years. Over the years I have watched him grow into a loving family man that has grasped the importance of being a responsible father, son, and human being. We all know that he has made some mistakes to put him in this current situation bit I am hoping to shed light on the real Maurice Collins not the one that is being depicted by his current situation.

Over the years Maurice has tried to occupy his time with several different jobs and hobbies. But the main things in his life that he has loved doing the most, outside of being with his children, is his love for cars. I was so proud when he took his love for cars to the next level and made it to an occupation. Maurice has always strived to better himself and make sure that his children know right from wrong and that their father loved them.

I hope with this letter you will see the real Maurice Collins and not judge or punish him as a harden criminal but as a loving man with children that has made a mistake.

Thank you for your time and patience in this matter.

Sincerely,

Katie Rollins
Store manager
Arby's

8-22-14

RECEIVED
AUG 2 5 2014
BY:----------------

Dear Mrs. Pollock, My name
is Courtny Gaston and I Co-
Parent with Maurice E Collins, We
have a 14yr old Son who is a Jr.
and loves his father very much, we
all understand that Maurice has
not made the best choices in the
past but he was trying to do the
best he could to provide for his
children, I recently moved closer
to him so that he could build a
better relationship with his son who
is at a age that he really needs
the best guidence he can give
him, my son had no knowlege of
his father doing until he was arrested,
my son was very hurt to find out
that his dad could not attend his
8th Gr graduation because of the trouble
he is in, Maurice understands that his
doing was wrong and is willing to
except the punishment for the crime
he committed but I am writting

to ask you if you can beg the Judge for my son to have mercy and lenency on his father behalf so he can get a second chance to make better chocies for him and his children future. Thank you

Sincerly, Courtny Gasten
303 E Madison st
Danville IL
61832
(312) 401-4342

Chavon M. Bush
5 N. Louis
Freeport, Illinois 61032
(217) 597-0663

August 14, 2014

To the honorable judge:

This letter is written by me, Chavon Bush, on behalf of Maurice Collins. I have known Maurice for well over 12 years. I was truly shocked to hear about the drug charges pending against him. This is so out of character for him. I first became aware of Maurice's' good character upon meeting him. From day one Maurice has always been one eager to help family and others. He never got in any trouble and always stayed humble.

Maurice is a family oriented man. He has 18 children in which he devotes a lot of his time to. His wife and kids have always been his first priority. From being involved in school activities to taking family vacations.

I know that Maurice has broken the law, although due to what I consider bad influence, I don't think sending him to prison for a long amount of time would be appropriate. Maurice has shown his remorse this offense in a major way. I truly believe, if given the chance, he will never place himself in a situation as such again. I say that not because he is a very close friend of mines, but because I truly believe it.

Maurice is a good, trustworthy man who has made a horrible mistake in his life but I honestly believe he has learned from this experience already.

I am humbly asking for leniency towards this husband, father, son, brother and uncle of many. I would like to thank you for taking the time out to read and allow me to share my input on Maurice's behalf.

Sincerely,
Chavon M. Bush

To whom it may concern:

In regards to the character of Maurice Collins:

I have never, and could not ask for a more loyal friend. He has always been there for me in times of need. He is a person that would literally give the shirt off his back to a friend if need be. In life friends come and go, but having known Maurice for more than a decade: I can say he is the kind of friend I and everyone else would want forever.

Maurice is a great and devoted father. He is loved and adored by his children. He is a man that loves his children more than my words could explain. He has mastered the delicate balance of being firm but fair with his children, and that is extremely difficult to do.

Maurice is a great guy in general; everyone that knows him is quite fond of and cannot say enough good things about him. He rarely has a problem with anyone, and is truly someone who gets along with and is loved by all.

Sincerely: Justin Allen

4/20/15

My name is Tanieyan Mason and I'm 15 years old. Maurice is my step dad, I never really had a dad in my life. But Maurice he was my dad he did things that my biological dad didnt do but he didnt just do for me he did things for my siblings, Grandma & Grandpa, auntie & uncle, his mother and sister. Plus his kids and he have 14 kids plus step kids when equal 18. He also helped his friends out. Maurice was a caring helping man. He made sure me and my siblings was good put shoes on our feet clothes on our back and food in our mouth. He was good to my mom, helped her out a lot! Maurice is a good man, just made bad choices. My younger sister Azariah needs her dad. I don't want her growing up without a father figure like me. All I ask is for you to lower his sentence so he can come home to his family, and see me graduate.

x Tanieyan Mason

By Mae

Recce was a good step dad when my dad was in Jail he was a Jokester and aways kidding aroun with me he bought me clothes, shoes and more and ceap a rought over my head.

Before you lock away my Love, Your Honorable Judge. I beg for Leniency on Maurice Collins Sr. Sentencing.

I would like to share my thoughts on Maurice. I felt like I did good when I feel in love with Maurice. In my eyes he was a Good Man, very kind hearted, and a people pleaser. I also know he loved all 14 plus my 5 children and would have done anything to provide for them. With that being said shows why Maurice got in the predictament he is in now. I understand your postion for sentencing Maurice time. I as his wife Alisha begs again for Liemency. I know you go by the law and read that you was a fair judge. I also would like to thank you! for allowing him out for those 5 month & considering his safety valve.

As I reflect on when the DEA called my phone it was like my whole world stoped. I couldn't believe his

Charges that was brought to Maurice, for he kept his lifestyle a secret away from me. When I meet Maurice we instanly feel in love with each other. We both seen the same hurt but yet the same passion burning in each other eyes. The passion to make a better living for self and our family. We also knew were just products of our society. But we both felt we can make difference and not repeat the cycle of our parents. Sometimes I feel like Maurice let me down but then again I know he tried. I shake my head because he failed victim to society. But I also know him being gone from his kids its gonna kill him but again Rebuild him to be a better man and father to his family. A lessoned learnt. But as a family we are behind Maurice we believe in Him and is begging for some consideration Judge.

Thanks in Advance
Alisha Collins